**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**CHRISTOPHER ADAM
BORDERS,**

      **Plaintiff,**

**vs.**                        **Case No. 3:21cv302-LC/CAS**

**KILOLO KIJAKAZI,
Acting Commissioner,
Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) pursuant to Title XVI of the Act. After consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I.    Procedural History

On December 2, 2016, Plaintiff, Christopher Adam Borders, filed an application for a period of disability and DIB and SSI and alleged disability beginning April 22, 2016. Tr. 108-09, 140, 277, 279.[1] The application was initially denied on January 31, 2017, and upon reconsideration on April 3, 2017. Tr. 86-111, 112-37, 140, 170-79. Plaintiff requested a hearing. Tr. 140, 180-81. On October 12, 2018, Administrative Law Judge (ALJ) Kevin Boucher, held a video hearing. Tr. 56-85, 140, 180-81. Plaintiff appeared in Pensacola, Florida; and the ALJ presided over the hearing from Mobile, Alabama. Tr. 56, 140. Brenda Joyce White, an impartial vocational expert (VE), testified. Tr. 80-84, 140, 367-68 (Resume). Brooke Thomas, an attorney, represented Plaintiff at the hearing. Tr. 59, 140, 199.

On December 18, 2018, the ALJ entered a decision and denied Plaintiff's applications for DIB and SSI concluding that Plaintiff was not disabled from April 22, 2016, through the date of the decision.[2] Tr. 140-51. On March 4, 2019, Plaintiff requested the Appeals Council to review the ALJ's decision. Tr. 230-32, 371-72. On February 20, 2020, after noting

---

[1] Citations to the record (transcript/administrative record), ECF No. 15, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[2] For DIB, Plaintiff must show disability on or before June 30, 2020. Tr. 11. This is not an issue in this case.

several issues for remand, the Appeals Council remanded the case to the

ALJ with instructions as follows:

> Upon remand, the Administrative Law Judge will:
>
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the non-treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. *As appropriate*, the Administrative Law Judge *may* request the non-treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment (20 CFR 404.1520b and 416.920b).
>
> Further, *if necessary*, obtain evidence from a medical expert related to the nature and severity of the claimant's amputation of right dominant arm (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).
>
> *If warranted by the expanded record*, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert

>and information in the Dictionary of Occupational Titles
>(DOT) and its companion publication, the Selected
>Characteristics of Occupations (Social Security Ruling
>00-4p).
>
>In compliance with the above, the Administrative Law
>Judge will offer the claimant an opportunity for a
>hearing, take any further action needed to complete the
>administrative record and issue a new decision.

Tr. 156-59; 158 (emphasis added).

On July 23, 2020, on remand, ALJ Boucher held a telephonic hearing.

Tr. 10, 34-55, 254, 261. Plaintiff was represented by Colin E. Kimmerly, an

attorney. *Id*. Brenda Joyce White, the vocational expert, testified for the

second time. The ALJ noted remand instructions:

>In its remand order, the Appeals Council directed the
>undersigned to give further consideration to the claimant's
>maximum residual functional capacity during the entire
>period at issue and provide rationale with specific
>references to evidence of record in support of assessed
>limitations; evaluate the non-treating source opinion and
>explain the weight given to such opinion evidence; and
>obtain evidence from a vocational expert to clarify the
>effect of the assessed limitations on the claimant's
>occupational base.

*Id*.

Plaintiff alleges disability since April 22, 2016. Tr. 10, 339. On August

5, 2020, the ALJ determined that Plaintiff has not been under a disability from

April 22, 2016, through the date of the decision. Tr. 7-22. On October 8,

2020, Plaintiff requested review of the ALJ's decision. Tr. 28-29, 274-76,

385-88. On December 23, 2020, the Appeals Council denied Plaintiff relief.

Tr. 1-6. The ALJ's decision stands as the final decision of the Commissioner.

*See* 20 C.F.R. § 404.981.

On February 18, 2021, Plaintiff filed a Complaint with this Court

seeking review of the ALJ's decision. ECF No. 1. The parties filed

memoranda of law, ECF Nos. 17 and 21, which have been considered.

## II.    Findings of the ALJ

The ALJ made several findings relative to the issues raised in this

appeal:

1. "The claimant meets the insured status requirements of the Social
   Security Act through June 30, 2020." Tr. 12.

2. "The claimant has not engaged in substantial gainful activity since
   April 22, 2016, the alleged onset date." *Id*.

3. "The claimant has the following severe impairment: amputated right
   upper extremity" which significantly limits Plaintiff's ability to perform
   basic work activities. Tr. 13. The ALJ reviewed treatment records
   pertaining to Plaintiff's "sporadic complaints related to depression"
   and Plaintiff's 2018 hearing testimony related to depression. *Id*. The
   ALJ also considered Plaintiff's hearing testimony on July 23, 2020,
   when "he did not allege substantial symptoms or limitations resulting
   from any mental impairment." *Id*. The ALJ further noted that he
   "cannot ignore that the claimant has not obtained regular treatment,
   including counseling, for mental impairments, and there has been
   no evidence of sustained symptomatology imposing significant
   limitation upon the claimant from a mental standpoint. Moreover,
   there was no indication from the record that the claimant has taken

medication for mental symptomatology over the course of the period for review." Tr. 13-14.

The ALJ considered the "paragraph B" criteria and determined that Plaintiff had *no* limitation in the functional area of understanding, remembering or applying information; *mild* limitation interacting with others; that Plaintiff's depression and anxiety have imposed *mild* limitation on his abilities to relate to and work with supervisors, co-workers, and/or the public; *mild* limitation in concentrating, persisting or maintaining pace; and *no* limitation in adapting or managing oneself. The ALJ concluded that Plaintiff's medically determinable mental impairments are non-severe. Tr. 14. The ALJ also determined that Plaintiff's hypertension is non-severe and that he "does not have a severe impairment related to substance abuse." Tr. 14-15.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[3] Tr. 15. In part, the ALJ considered the applicability of Listing 1.05 involving "amputation of both hands; one or both lower extremities; one hand and one lower extremity; or hemipelvectomy or hip disarticulation. In that the claimant experienced an above the elbow amputation of the right arm, Listing section 1.05 does not apply." *Id*.

5. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) [DIB] and 416.967(b) [SSI],[4] except that he has had an amputation of the right upper extremity and, thus, is *never* able to reach, handle, finger, or feel with the right upper extremity. The claimant can *occasionally* climb

---

[3] The ALJ is not required to identify all impairments that should be considered severe. *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Plaintiff does not claim the ALJ omitted a severe impairment. ECF No. 17.

[4] In general, the legal standards applied are the same regardless of whether the claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404.416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

ladders, ropes, and scaffolds and must avoid concentrated exposure to hazards like machinery and unprotected heights." [5,6] Tr. 15 (emphasis added). The RFC does not include a sit/stand limitation.

In the prior case on remand, ALJ Boucher determined Plaintiff had the following RFC: "[T]he claimant has the [RFC] to perform light work…, except that he can *never* reach, feel, finger, or handle with the right upper extremity; *never* push and pull with the right upper extremity; *never* climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibration and hazards, like machinery and unprotected heights." Tr. 145. In both decisions, the ALJ determined Plaintiff can perform *light* work. There are two main differences. In the first decision, Tr. 145, the ALJ determined Plaintiff can *never* climb ladders, ropes, or scaffolds whereas in the current decision, Tr. 15, the same ALJ determined Plaintiff can *occasionally*, *see infra* at 8-9 n.8, climb ladders, ropes, and scaffolds. Also, in the first decision, the ALJ determined Plaintiff can *never* push and pull with the upper right extremity, Tr. 145, whereas, in the current decision, the ALJ omitted this limitation, Tr. 15.

6. "The claimant is unable to perform any past relevant work" as a fast foods worker, unskilled with an SVP of 2 requiring light exertion and

---

[5] "Occasionally" means: "activity or condition exists up to 1/3 of the time." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating. "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time." *Id*.

[6] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon *all* of the relevant evidence including the claimant's description of limitations, observations by treating and examining physicians or other persons, and medical records. *Id.*; *see* SSR 96-8p (July 2, 1996); *see also* Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). The responsibility for determining a claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor"). Relevant medical and other evidence includes, among other things, medical history, medical signs and laboratory findings, (*i.e.*, side effects of medication), daily activities, lay evidence, recorded observations, and ethical source statements. SSR 96-8p (July 2, 1996).

warehouse technician, unskilled work with an SVP of 2 requiring medium exertion. Tr. 20, 50. "Accordingly, the claimant is unable to perform past relevant work as actually or generally performed." *Id*.

7. The claimant was born in 1989 and "was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date." Tr. 20. Plaintiff has at least a high school education. *Id*. Transferability of jobs is not material in this case. Tr. 21.

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as the representative jobs/occupations of counter clerk, page, and usher, all light exertion, unskilled, with an SVP of 2.[7] Tr. 21, 51; *see supra* at 7 n.6. The ALJ noted that Plaintiff had the RFC to perform a full range of light work but his "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations" and, as a result, the ALJ posed hypothetical questions to the vocational expert who opined that with such limitations, Plaintiff can perform the representative jobs/occupations noted above.[8] *Id*.

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see infra* at 27, n.14. A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including one month." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1981), App. C: Components of the Definition Trailer, § II, SVP. "[SVP] it is defined as the amount of elapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id*. Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). *See* Buckwalter v. Comm'r of Soc. Sec., 5 F.4th 1315 (11th Cir. 2021) (discussing SVP Levels 1 and 2).

[8] The ALJ posed a hypothetical question to the vocational expert that included some of the limitations set forth in the RFC except the ALJ included, in the hypothetical question, the limitation of "*never* pushing and pulling . . . with the right upper extremity" and "*never* climbing ladders, ropes, or scaffolds." Tr. 51 (emphasis added). As noted herein, *supra* at 7-8, these limitations appear in the ALJ's 2018 first decision but not in

9. "The claimant has not been under a disability, as defined in the Social Security Act, from April 22, 2016, through the date of this decision" August 5, 2020. Tr. 41.

## III.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); *see also* Biestek v. Berryhill, _U.S._, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citations and internal quotation marks omitted)). "Substantial evidence is more than a scintilla, but less than a preponderance." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[9]

---

the 2020 decision. However, these hypothetical limitations are *more* restrictive than the actual RFC limitations. *Compare* Tr. 15 and Tr. 145 *with* Tr. 51.

[9] This Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips, 357 F.3d at 1240 n.8 (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 224 (2002). In addition, an individual is entitled to DIB if he or she is under a disability prior to the expiration of his or her insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs.,

845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal the criteria listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's

impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant bears the burden of proving he or she is disabled and is responsible for producing evidence in support of the claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV. Legal Analysis

**The ALJ did not err when denying Plaintiff's applications for Social Security benefits.**

Plaintiff argues that the ALJ erred in failing to follow the February 20, 2020, Appeals Council remand directives; failed to properly refute the opinion of consultative examiner John Dawson, M.D.; and failed to properly provide support for the RFC. ECF No. 17.

1.

The ALJ must articulate the weight given to the medical opinions and the reasons for that weight. *See* Winschel v. Astrue, 631 F.3d 1176, 1179

(11th Cir. 2011). As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record resolving conflicts that might appear. 20 C.F.R. § 404.1527.[10] When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. *Id*. § 404.1527(b) & (c).

This case involves consideration of the ALJ's 2020 decision after remand; the 2017 opinion(s) of state agency physician Efren Baltazar, M.D.,

---

[10] This provision, applied by the ALJ here, Tr. 16, applies to claims, like Plaintiff's, filed *before* March 27, 2017. *See* ECF No. 21 at 4 n.1. An ALJ is required to weigh a medical opinion under these prior regulations applicable to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1520c. For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies. Stated otherwise, for claims filed after March 27, 2017, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past." Webster v. Kijakazi, No. 20-60856, 2021 U.S. App. LEXIS 35340, at *5, 2021 WL 5563333 (5th Cir Nov. 29, 2021) (citing "82 Fed. Reg. 5853 (Jan. 18, 2017) (commenting that the rule change would enable courts to focus on 'the content of the evidence [rather] than on the source.'")).

on reconsideration; and the 2017 evaluation of one-time medical consultant, John A. Dawson, M.D. The medical records recount Plaintiff's 2006 crash history and subsequent treatment and other medical intervention in 2017-19. *See* Tr. 16-19.

The ALJ considered the facts related to Plaintiff's April 2006 crash resulting in the above-elbow amputation. Tr. 16. By 2008, "the claimant had a well-healed right upper extremity stump, but it was extremely tender to palpation." *Id*. Medical records from 2017 and 2018 "routinely referenced" Plaintiff's "elbow right arm amputation." Tr. 17. "Notations disclosed that the claimant was very insistent on narcotic use as the only means to improve his pain" and "[h]e was referred to pain management and was started on" several drugs and various medications. Tr. 17-18. "At a visit in August 2018, examination illustrated the claimant's full range of motion in all joints, and he was advised to continue his current medications." Tr. 18.

Notations from Community Health Northwest Florida (CHNF) in late 2018 and early 2019 reference "his symptoms of chronic upper extremity pain in the right arm." Plaintiff's "above elbow amputation on the right side was observed, but other findings included for range of motion in all joints." *Id*. After his lack of toleration of two drugs, he "was then placed on Tylenol 4, with there being indication that such medication was helpful." *Id*. "Certain

notations revealed that the claimant had been out of pain medication, and, at his last documented visit with [CHNF], it was noted that his pharmacy reported that he was out of refills (although Eforce indicated that he had two more refills)." Tr. 18-19. There are notations from the Escambia Health Department disclosing in May 2020 "his assessed chronic pain syndrome disorder related to his amputation. While notations documented the claimant's right upper extremity amputation tenderness, no gross motor dysfunction was found on examination." Tr. 19.

Dr. Dawson examined Plaintiff on January 19, 2017. Tr. 423. Plaintiff's "primary complaint" was the "amputation of the right arm above the elbow leaving him with the residual shoulder stump. He also complains of shortness of breath." *Id*. The problem began with a 2006 motorcycle accident with the resultant amputation. *Id.* Plaintiff's past medical history indicates "he had no MD intervention"; "takes no medications and he does not have prosthesis for his right arm." *Id*. He "knows how to drive" and "[l]ast worked as a warehouse tech for Gulf Medical," with duties including inventory, shipping, receiving, and stocking. Tr. 42, 423.

The "neuro" examination included: "Passes Romberg test. He can tandem walk. No change to sensation all four limbs. Gait is nonantalgic. He

can hop, heel walk, toe walk and stand on either leg. Strength was 5/5 LUE

and 5/5 lower extremities without atrophy." Tr. 423.

With respect to the "upper extremities":

> He has normal fine and gross manipulative skills of the left
> hand. Obviously now left hand dominant though was
> previously right hand dominant. He is of course missing
> right hand, forearm and elbow as a short stump
> approximately 8cm for the shoulder which shows marked
> reduction in ROM. See chart. Full ROM of fingers, wrists
> [sic], elbows [sic] and shoulders on left without evidence of
> arthritis, bursitis or tendinitis.

"He was able to ascend and descend the examination room table of his own

accord . . . He shows full ROM of lumbar and cervical spines." Tr. 424. With

respect to the "lower extremities," "[h]e showed full passive ROM of hips,

knees, ankles, feet and toes without evidence of arthritis, bursitis or

tendinitis. He was able to dress and undress of his own accord." *Id*.

Dr. Dawson provided an "MSO" (medical source opinion) as follows:

> Obviously this claimant will have difficulty with
> manipulation. He has one hand left. It is likely he will be
> able to lift and carry 10lbs constantly with this hand and he
> can certainly perform normal fine and gross manipulation
> with this hand but he will be unable to grip items using both
> hands and therefore relatively heavy objects say more than
> a pound or so become progressively more difficult to
> manipulate with one hand only. He will also have difficulty
> with utilization of tools. This claimant can stand and walk
> for 4 out of 8 hours; sit for a total of 6 out of 8 hours.[11] He

---

[11] The ALJ found "no support in the objective record for Dr. Dawson's opinion that
the claimant could stand and walk for only four out of eight hours, emphasizing that the

> is well advised not to attempt to climb ladders, ropes, or
> scaffolds.

*Id*. A person who can *constantly* lift and carry negligible weight to 10 pounds

can perform medium work, whereas a person who can only constantly lift

negligible weight, cannot perform light work. *See Selected Characteristics of*

*Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)*.

U.S. Department of Labor, Employment and Training Administration, App. C,

at C-2 (1993 ed.). Dr. Dawson also provided a range of motion report which

was normal for Plaintiff's left range but abnormal for most of his right range.

Tr. 420-21.

On March 30, 2017, Efren Baltazar, M.D., a state agency medical

consultant, performed a paper assessment on reconsideration.[12] Tr. 115-20,

126-31.

---

treatment record has not shown ongoing musculoskeletal abnormalities regarding the claimant's back or lower extremities, including with gait, that would have supported limitations on standing and walking." Tr. 17; *see also* Tr. 437-39, 462, 467, 480, 485, 491. The ALJ gave "that opinion little weight." Tr. 17.

[12] The findings of a state agency medical consultant may provide additional evidence to support the ALJ's findings. *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). *See also* Kemp v. Astrue, 308 F. App'x 423, 427 (11th Cir. 2009) (unpublished) ("the weight to be given [to] a non-examining physician's opinion, depends, among other things, on the extent on which it is supported by clinical findings and is consistent with other evidence.").

Dr. Baltazar was aware of Plaintiff's age of 27 and "allegations of amputation of right arm and nerve damage." Tr. 115, 126. He was also aware of Dr. Dawson's report, including the relevant range of motion entries. *Id*. There is no mention of any sit/stand limitations. *Id*. Dr. Baltazar also considered additional physical information regarding Plaintiff, including his reported limitations. Tr. 119, 130.

The ALJ considered Dr. Baltazar's evaluation and stated:

> At the reconsideration level, state agency consultant Efren Baltazar, M.D., concluded that the claimant could perform light exertion, but that he was limited to occasional pushing and/or pulling with the right upper extremity. Dr. Baltazar also opined that the claimant could occasionally climb ladders, ropes, and scaffolds; was limited in reaching in any direction, including overhead; and was limited in handling and fingering on the right. *Specifically, Dr. Baltazar concluded that the claimant could never reach, handle, finger, or feel.* Finally, Dr. Baltazar concluded that the claimant must avoid concentrated exposure to vibration and hazards, including machinery and heights (Exhibits 7A and 8A).[13]

> The undersigned has granted great weight to the opinions of Dr. Baltazar, in that there was support in the record for assignment to light exertion with particular limitations to avoiding concentrated exposure to hazards, such as machinery and unprotected heights, and occasionally being able to climb ladders, ropes, and scaffolds. Further, the objective treatment record at the hearing level has

---

[13] This paragraph is substantially the same as in the prior decision except as emphasized. Tr. 16, 146.

supported Dr. Baltazar's findings that the claimant could never reach, handle, and finger.[14]

Tr. 16. Dr. Baltazar also determined Plaintiff could *occasionally* lift and/or carry 20 pounds; *frequently* lift and/or carry 10 pounds; and stand and/or walk and sit, both with normal breaks, about six hours in an eight-hour workday. Tr. 117, 128.

As part of the RFC assessment, the ALJ provided two separate assessments of Dr. Dawson's examination notes including his MSO which are set forth below. Tr. 17, 19.

> The current record reveals that the claimant failed to return for ongoing treatment related to his *above elbow* amputation and later presented for a disability evaluation in January 2017 with consultative evaluator John Dawson, M.D., who noted his complaints of symptoms related to the amputation. The claimant confirmed that he had not presented to a physician for the condition, that he took no medication for the condition, and that he did not have a prosthesis for his right arm. During examination, the claimant was observed to have no change to sensation in all four limbs, and, regarding the upper extremities, he had normal fine and gross manipulative skills of the left hand. Dr. Dawson noted the claimant's amputation of the right hand, forearm, and elbow with a short stump, as well as marked reduction in range of motion of the shoulder on the right. The claimant was noted to have full range of motion of the finger, wrist, elbow, and shoulder on the left. Dr. Dawson diagnosed the claimant with absence of the right upper extremity, and, in his medical source opinion, opined that the claimant would have difficulty with manipulation

---

[14] This paragraph is shorter and was substantially re-written from the prior decision. Tr. 16, 146.

(having one hand left). Dr. Dawson also concluded that it was likely that the claimant would be able to lift and carry ten pounds constantly with that hand and could perform normal fine and gross manipulation with that hand, but that he would be unable to grip items using both hands, so objects weighing more than a pound or so would become progressively more difficult to manipulate with only one hand. Dr. Dawson further opined that the claimant would have difficulty with the utilization of tools. According to Dr. Dawson, the claimant could stand and walk for four out of eight hours and could sit for a total of six out of eight hours. Finally, Dr. Dawson stated that the claimant would be well-advised not to attempt to climb ladders, ropes, or scaffolds (Exhibit 4F).[15]

The undersigned has granted partial weight to Dr. Dawson's medical source statement, in that he has given great weight to his general opinion that the claimant would have difficulty with manipulation, with having one hand left. However, Dr. Dawson did not define "difficulty", and he stated that it was "likely" (but offered no definitive statement) that the claimant would be able to lift and carry ten pounds constantly with that hand and could perform normal fine and gross manipulation with that hand. Therefore, in that Dr. Dawson did not provide a certain opinion, the undersigned grants those statements less weight. The undersigned has given great weight to Dr. Dawson's finding that the claimant would be unable to grip items using both hands, noting the claimant's obvious amputation. The undersigned has granted partial weight to Dr. Dawson's conclusion that objects weighing more than a pound or so would become "progressively more difficult" for the claimant to manipulate with only one hand, noting that such general assertion has a basis in the objective record. However, Dr. Dawson did not explain how it would become progressively more difficult or provide the degree of difficulty that could be expected. Dr. Dawson further opined that the claimant would have "difficulty with the

---

[15] This paragraph is the same as in the prior decision. Tr. 16-17, 146-47.

utilization of tools." Again, he did not define difficulty or provide a rationale for why working with tools would be problematic. Nevertheless, the undersigned has granted partial weight to that opinion, agreeing with the general premise that an individual with an amputated right upper extremity would be limited in using some tools. The undersigned finds no support in the objective record for Dr. Dawson's opinion that the claimant could stand and walk for only four out of eight hours, emphasizing that the treatment record has not shown ongoing musculoskeletal abnormalities regarding the claimant's back or lower extremities, including with gait, that would have supported limitations on standing and walking [*see, e.g.*, Tr. 437-39, 462, 467, 485, 488, 491]. Therefore, the undersigned has granted that opinion little weight. Finally, the undersigned has given less weight to Dr. Dawson's statement that the claimant would be "well-advised not to attempt to climb ladders, ropes, or scaffolds", because he provided no specific explanation for such limitation.[16]

*****

After considering the record regarding the claimant's allegations related to his right arm above elbow amputation, the undersigned finds that there is nothing that would preclude his performance of work activity within the parameters of the residual functional capacity determination herein. While the undersigned acknowledges the claimant's history of surgical procedures related to his amputation, he cannot ignore the claimant's lack of regular treatment related to his amputation after 2008. The undersigned has also considered the claimant's earnings after his amputation and notes that the record disclosed considerable earnings in 2014 and 2015, despite the loss of his right dominant upper extremity. The undersigned additionally finds that there has been no evidence of the claimant's recurrent presentations to the

---

[16] This paragraph has been substantially re-written from the prior decision. Tr. 17, 147.

emergency room or inpatient hospitalizations for amputation-related pain after his onset date of disability. The undersigned emphasizes the claimant's testimony *from his hearing in 2018 that he had* custody of his children and *provided* care for them, although he alleged getting help with bathing and feeding the younger child. The claimant also testified that his 1½ year old son *stayed* at home with him and that there *were* times when he was alone with him. Moreover, the claimant testified that he *drove*. Treatment notations of record and hearing testimony from his *2018* hearing documented the claimant's reports that he did not want to take particular medications because he needed to be wakeful and functioning for childcare. The undersigned *further* notes the claimant's testimony *at his hearing in 2018* that he *was* again on Medicaid; that he *got* relief with his current medications; and that he *was* pleased with those medications. *The undersigned emphasizes that he has considered the claimant's allegations made at his hearing on July 23, 2020, but finds that they were not fully corroborated by the overall objective record.* The undersigned *additionally* cannot ignore treatment documentation revealing that the claimant did not use a prosthesis and was not interested in using one. *The undersigned further emphasizes that the overall record failed to document the claimant's presentation over the duration of the period for consideration for receipt of pain or other medications in relation to his right upper extremity symptoms.* After considering the pertinent record, the undersigned has failed to find evidence of totally debilitating functional limitations resulting from the claimant's right arm above elbow amputation.[17]

In reaching his determination of disability, the undersigned has fully considered all allegations made by the claimant at his hearing, including complaints related to his amputation, hypertension, anxiety, and depression. The undersigned

---

[17] This paragraph is substantially the same except for most of the emphasized portions. Tr. 19, 148.

finds that the objectively demonstrable evidence of record has failed to support that the claimant is as impaired as he has alleged. The undersigned notes that no credible treating or consultative physician has opined that the claimant possessed disabling functional limitations as a result of any condition or from any resulting symptoms. The undersigned finds that there is no objective documentation that the claimant's performance of daily activities has been substantially impaired due to his diagnosed conditions. The undersigned also recognizes the paucity of medical evidence in this case for complaints surrounding his alleged impairments and finds it reasonable to assume that if the claimant were experiencing difficulties to a disabling degree, he would have presented to his physicians for persistent, regular, and ongoing treatment. It is noteworthy that documentation of record does not contain any inpatient hospitalizations or evidence of recurrent emergency room presentations for any condition since his alleged onset of disability. The undersigned further notes that, when treatment has been obtained, the claimant's clinical examination findings have often been found to be normal or minimally abnormal, with there being no evidence of ongoing substantial abnormalities. Moreover, the objective diagnostic evidence of record has not been reflective of impairments that have produced disabling or totally debilitating functional limitations for the claimant. According to the record, there has been no evidence supporting a conclusion that the claimant's symptoms and/or impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications, as well as adherence to conservative treatment measures and modalities. The record contains no evidence of the claimant's ongoing difficulties with side effects of medication, and there is no indication from the record that the claimant was unsuccessfully tried on alternative medications in an attempt to find medications that did not produce adverse effects.[18]

---

[18] This paragraph is the same as in the prior decision. Tr. 19-20, 148-49.

> Based on a review of the medical evidence of record, as well as the claimant's testimony at the *hearings*, the undersigned finds that the preponderance of the evidence contained in the record does not support the claimant's allegations of totally incapacitating pain and other symptomatology and that the claimant's statements regarding the severity, frequency, and duration of his symptoms are overstated. The record fails to document persistent, reliable manifestations of a disabling loss of functional capacity by the claimant resulting from his reported symptomatology, and all of the above factors lead the undersigned to a conclusion that the claimant's alleged symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing the physical and mental requirements of work activity on a regular and sustained basis as set forth in the residual functional capacity statement herein.[19]

Tr. 17, 19-20.

Plaintiff argues the ALJ erred because he did not follow the instructions of the Appeals Council on remand and did not adequately explain the weight he gave to Dr. Dawson's opinion(s). ECF No. 17 at 2-6. Dr. Dawson is not a treating physician, so his opinion was not entitled to deference or special consideration. *See* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (explaining that one-time medical examiners are not "treating

---

[19] This paragraph is the same as in the prior decision except as emphasized. Tr. 20,149.

physicians" and thus "their opinions are not entitled to deference ")); *see also* 22 C.F.R. § 404.1527(c)(2). The Court "give[s] more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." Because the opinions of "one-time examiners" and non-treating physicians, like Dr. Dawson, are not entitled to deference, the ALJ was entitled to discount his assessment of Plaintiff's limitations. <u>McSwain</u>, 814 F.2d at 619. Further, the ALJ explained the RFC in light of the medical evidence, including the analyses of Doctors Dawson and Baltazar. The ALJ's RFC determination is supported by substantial evidence. But this does not end the inquiry.

The ALJ substantially rewrote a portion of his analysis of Dr. Dawson's opinions. *See supra* at 20-21. He observed Dr. Dawson's opinion concerning Plaintiff's limitations of his left arm were vague as he did not define how much "difficulty" Plaintiff would have with manipulation and he offered no definitive opinion regarding how much Plaintiff could lift and carry. Tr. 17. The ALJ also found the record did not support Dr. Dawson's opinion that Plaintiff could only stand and walk for four hours in an eight-hour day as treatment records did not show musculoskeletal abnormalities that would support the limitation. *Id*. The ALJ also observed Dr. Dawson provided no explanation for his

opinion that Plaintiff should avoid climbing. *Id*. The ALJ properly discounted those portions of Dr. Dawson's opinion(s) set forth herein. Crawford, 363 F.3d at 1160; 20 C.F.R. § 404.1527(c)(3).

Further, the ALJ found Dr. Dawson's opinion unsupported by the evidence. Tr. 17-20. The ALJ specifically discussed the evidence that does not support, and is generally inconsistent with, Dr. Dawson's opinion, to wit: Dr. Dawson's normal clinical findings with respect to Plaintiff's left upper extremity, Tr. 16, 420-22, 424; treatment notes that show Plaintiff had a normal gait and no musculoskeletal abnormality except for right arm amputation, Tr. 18, 462; and Dr. Baltazar's opinion that Plaintiff could perform a range of light work, Tr. 16, 117-20.

Plaintiff also challenges the ALJ's observation that Dr. Dawson did not provide a basis for his opinion that Plaintiff could not attempt to climb ladders, ropes, or scaffolds. ECF No. 17 at 6. However, Plaintiff's attempt to provide the missing explanation is not persuasive. Plaintiff's right arm amputation status, alone, does not explain an inability to climb. Also, Dr. Baltazar found Plaintiff could occasionally climb ladders, ropes, and scaffolds in light of his impairment, which is consistent with the ALJ's RFC finding. Tr. 15, 118; *see supra* at 6-7.

Even if Plaintiff could show error, Plaintiff does not argue that greater limitations regarding ability to climb would preclude him from performing the jobs the ALJ found he could perform. Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 906 (11th Cir 2013) (unpublished); *see infra* at 27-33 for discussion of the vocational expert's testimony regarding jobs Plaintiff can perform.

The ALJ was not required to seek clarification from Dr. Dawson. As noted above, re-contacting the medical source is one method the ALJ may use, but is not required to use. *See* Jones v. Soc. Sec. Admin., Comm'r, 857 F. App'x 587, 591 n.1 (11th Cir. 2021) (unpublished). The ALJ had sufficient evidence, including the opinion of Dr. Baltazar, to reach his decision.

The next issue is whether Plaintiff can perform the representative jobs described by the vocational expert.

2.

The ALJ posed the following hypothetical to the vocational expert:

> Please assume a hypothetical individual of the claimant's age and education, with the past jobs you described. Further assume that this individual is limited to a light exertion level, with the additional limitations of never pushing and pulling, reaching, handling, fingering, or feeling with the right upper extremity; never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to vibration, and hazards like machinery and unprotected heights. With those limitations, can the hypothetical individual perform any of the past work?

Tr. 50-51; *see supra* at 8 n.8. The vocational expert opined Plaintiff could not perform his past work but could perform the job of *counter clerk*. *Id*. After consulting her "handwritten notes" and "[t]o make sure of those manipulative restrictions," she also opined Plaintiff could perform the jobs of *usher* and *page*. *Id*. (These jobs would not be available if the exertional level is sedentary and considering the "manipulative limitations." Tr. 52.)

According to the DOT, the three jobs require light exertion, *see supra at 6-8,* nn.6-7, and have an SVP of 2. A counter clerk and page require *no* climbing, balancing, stooping, kneeling, crouching, and crawling but *occasional* reaching, handling, and fingering may be required. An usher is not required to climb, balance, kneel, or crawl but *occasional* stooping, crouching, reaching, handling, and fingering may be required. *See* SCO, pp. 333, 359, 369 and App. C (physical demands) at C-3, ¶¶ 8-10 and ID-2.

"Reaching" is defined, in part, as "[e]xtending *hand(s) and arm(s)* in any direction." (emphasis added). "Handling" is defined, in part, as "[s]eizing, holding, grasping, turning, or otherwise working with *hand or hands*." (emphasis added). "Fingering" is defined, in part, as "[p]icking, pinching, or otherwise working primarily with fingers rather than the whole *hand or arm* as in handling." (emphasis added). *Id*.

In this case, the vocational expert testified Plaintiff could perform three representative, light exertion jobs that, based on the hypothetical, would require *no* pushing and pulling, reaching, handling, fingering, or feeling with the right upper extremity and *never* climbing ladders, ropes, or scaffolds. Tr. 51. The vocational expert confirmed that the DOT does not discuss "the use of one hand" and that based on her "experience as a rehabilitation counselor, for over 25 years," "the jobs [she] named are jobs that are – can be performed in that manner," *i.e.*, with one hand. Tr. 52-53.

On cross-examination, Plaintiff's counsel posed the following hypothetical with the manipulative limitations expressed by Dr. Dawson, *see supra* at 17, Tr. 424, and with the following caveat: "I think I just have one question for Ms. White. And, and this is, I suppose, more of just an abstract question regarding limitations and where that would fall within the DOT regulations." Tr. 53. The hypothetical followed:

> So if you had a hypothetical person who is able to stand and walk only four hours total a day, but could sit for six; that this person can lift and carry 10 pounds constantly, and would be able to do normal and fine gross manipulation with the left-hand, but would only be able to manipulate items that would weigh one to two pounds; and would have no ability to reach, handle, finger, or feel with the right hand. Would that fall within a sedentary RFC, kind of as asked by the judge in the second hypothetical?[20]

---

[20] The three jobs do not have a specific DOT criterion pertaining to sitting and standing, although the definition of "light work" states, in part, that "a job/occupation is

*Id. See supra* at 16-17 for Dr. Dawson's "MSO" and limitations, Tr. 424. The

vocational expert responded in the affirmative; and, thus, Plaintiff could not

perform the three representative jobs given these limitations. *Id.*

The ALJ noted that the

> other hypothetical questions were posed at the hearing that
> elicited different responses from the vocational expert.
> Those questions, however, contain residual functional
> capacities and/or hypothetical information that, upon
> review of the reliable record, are either not accurate or
> have less evidentiary foundation. Accordingly, the
> vocational expert's responses thereto are of no probative
> value.

Tr. 21. It appears the ALJ was referring to the question posed by Plaintiff's

counsel noted above.

Social Security Ruling 00-4p provides in pertinent part:

> Reasonable explanations for such conflicts, which may
> provide a basis for relying on the evidence from the VE or

---

rated Light Work when it requires: (1) walking or standing to a significant degree; (2) sitting most of the time while pushing or pulling arm or leg controls; or (3) working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." SCO App. C at C-2. Also, light work includes occasionally lifting or carrying negligible to 20 pounds; frequently lifting or carrying negligible to 10 pounds; and constantly lifting or carrying negligible weight. *Id.* The ALJ expressly considered Dr. Dawson's stand/walk parameters and gave that opinion "little weight" because there is no support in the objective record, "emphasizing that the treatment record has not shown ongoing musculoskeletal abnormalities regarding the claimant's back or lower extremities, including with gait, that would have supported limitations on standing and walking." Tr. 17; *see, e.g.*, Tr. 437-39, 462, 467, 485, 488, 491. The ALJ also gave "less weight" and "partial weight" to Dr. Dawson's conclusions regarding Plaintiff's ability to lift and carry objects because Dr. Dawson did not define difficulty in context or "explain how it would become progressively more difficult or provide the degree of difficulty that could be expected" with the increase in weight. *Id.*

> VS, rather than the DOT information, include, but are not limited to the following:
>
> . . . .
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *3 (eff. Dec. 4, 2000). SSR-00-4p only imposes an "affirmative duty" on the ALJ to inquire whether any such conflict exists, and, if such conflict exists, obtain a reasonable explanation for it. If the ALJ inquires as to the existence of a conflict and neither the vocational expert nor plaintiff identifies an apparent conflict or inconsistency, the ALJ has fulfilled his duty under SSR-00-4p. Jones v. Comm'r of Soc. Sec., 423 F. App'x 938, 939 (11th Cir. 2011) (unpublished).

The Eleventh Circuit held in Jones v. Apfel, 190 F.3d 1224 (11th Cir. 1999), that when there is a conflict between the vocational expert's testimony and the DOT, "the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of admissible information concerning jobs.'" *Id.* at 1229-30 (quoting Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)). Where the vocational expert opined that the ALJ's hypothetical person could perform certain jobs, the ALJ was permitted to base his findings about those jobs

exclusively on the vocational expert's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation. Jones, 423 F. App'x at 939; *see also* Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 661 (11th Cir. 2007) (unpublished) (reiterating that "[i]f there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT."). Here, there is no discernible conflict with the vocational expert's testimony and the DOT and related information in the SCO. Thus, the vocational expert's testimony is entitled to deference; and the ALJ properly relied on the vocational expert's testimony.

Aside from posing one hypothetical question to the vocational expert, counsel did not deem the ALJ's hypothetical question sufficiently deficient, or the vocational expert explanation sufficiently lacking, to warrant further development at the hearing. *See* Smith v. Astrue, No. 5:09cv158/RS/EMT, 2010 U.S. Dist. LEXIS 97549, 2010 WL 3749209, at *15 (N.D. Fla. Aug. 25, 2010), report and recommendation adopted, No. 5:09cv158, 2010 U.S. Dist. LEXIS 97535, 2010 WL 3749193 (N.D. Fla. Sept. 17, 2010) (citing White v. Astrue, 240 F. App'x. 632, 634 (5th Cir. 2007) (citing Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) (stating "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific

testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")). The ALJ asked the vocational expert whether her testimony was consistent with the DOT; and the expert answered that question in the affirmative. Tr. 52. The ALJ properly relied on the testimony of the vocational expert; and no harmful error has been shown.

3.

Plaintiff argues that in determining his RFC, the ALJ did not properly consider all the evidence, including the medical opinion of Dr. Dawson. ECF No. 17; *see supra* at 15-17, 18-24 (ALJ's assessment of Dr. Dawson's opinions). The ALJ assessed Plaintiff's RFC during the relevant period from the amended alleged onset date of April 22, 2016, to the decision date. Tr. 15-20, 22.

The overall medical evidence and the other evidence in the record recited by the ALJ supports the ALJ's finding that Dr. Dawson's opinion was not persuasive. As noted above, the responsibility to determine a claimant's RFC is based on all the evidence. *See supra* at 7 n.6. An ALJ does not substitute judgment for that of a medical source by simply carrying out the regulatory role as an adjudicator who is responsible for assessing a

claimant's RFC. <u>Beegle v. Soc. Sec. Admin., Comm'r</u>, 482 F. App'x 483, 486, 488 (11th Cir. 2012) (unpublished).

4.

Lastly, Plaintiff argues the ALJ erred because he did not inquire further of Dr. Dawson, particularly, given the ALJ's statements that Dr. Dawson did not fully explain some of the limitations set forth in the MSO. ECF No. 17.

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. §§ 404.1512(a); 416.912(a); <u>Moore v. Barnhart</u>, 405 F.3d at 1211. On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record. <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. §§ 404.1516(d), 416.912(d). *See* <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999) ("One of our recent opinions confirms, moreover, that an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.") (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.")); 20 C.F.R. § 404.1520b. Further, under Social Security Ruling 96-5p, the ALJ must make "every reasonable effort" to re-contact a medical source when the medical evidence does not support

the source's opinion and the ALJ cannot ascertain the basis for that opinion from the case record. <u>Vesy v. Astrue</u>, 353 F. App'x 219, 225 (11th Cir. 2009) (unpublished). The question here is whether there are "the kinds of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff. <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997).

Contrary to Plaintiff's argument, the ALJ was not required to seek clarification from Dr. Dawson. Re-contacting a medical source is one method the ALJ may use but is not required to use to further develop the record if he finds he can make a determination about disability. 20 C.F.R. § 404.1520b(b); <u>Jones v. Soc. Sec. Admin., Comm'r</u>, 857 F. App'x at 591 (observing, "the current regulations provide that, when the Commissioner is unable to reach a conclusion of whether the claimant is disabled, it '*may* recontact [the claimant's] medical source'") (citing 20 C.F.R. § 404.1520b(b)(2)(i)).

The ALJ's decision sufficiently explains the evidence and reasoning supporting the decision, including the opinion evidence, to "enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citation omitted). The decision of the ALJ should be affirmed.

Plaintiff requests this Court to re-weigh the evidence and substitute its judgment for that of the ALJ. <u>Bloodsworth</u>, 703 F.2d at 1239. The role of a reviewing court under 42 U.S.C. § 405(g) is limited to determining whether there is substantial evidence in the record as a whole to support the decision. As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be affirmed.

A final word is in order. The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The record reveals Plaintiff has challenges and difficulties. Nevertheless, the only issue before the Court is whether the decision by the Commissioner, that Plaintiff did not meet this standard, is adequately supported by the evidence, and was made in accordance with proper legal

standards. As the Court finds that to be the case, the decision of the Commissioner should be affirmed.

## V.    Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record; and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for DIB and SSI be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on March 24, 2022.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**